Nelson, J.,
delivered the opinion of the Court.
This suit was commenced on the 7th of August, 1865, in the Circuit Court of Jefferson County, by Alexander Haun, Jr., who sues by his next friend, Alexander Haun/ Sr., for trespass, assault and battery, and false imprisonment, against Pleasant A. Witt; and verdict and judgment were rendered at the April Term, 1868, for fifteen hundred dollars. It seems, from the evidence, that the plaintiff in error, who resided in the vicinity of Bull Gap, and was the owner of a mill, which, in the language of the witnesses, had been frequently “ robbed,” applied to Col. Giltner, then in command of the Confederate forces, to send a scout for the purpose of breaking up a band of forty or fifty white men and negroes, (“bushwhackers,” as they are styled by one of plaintiff’s witnesses,) who were encamped in the neighborhood, belonged to no regular command, and were supposed to be the persons who had pillaged the mill. The scout was sent, and the defendant in error and his brother, Henry *162 C. Haun, who were supposed to be absent, and in the rear of the Federal army, but were, in fact, secreting themselves in order to avoid conscription into the rebel service, were arrested and taken, first, in Bull Gap, and then to a place near Midway; that they were detained in custody some eight or ten days, when they were released. It does not appear that the plaintiff in error was present at the arrest, or at any time exercised any control over the prisoners; and the question of fact, in the Court below, was simply whether he had caused and procured the arrest to be made. He was then sixty-five or seventy years of age, and was the uncle of the prisoners. There was no direct evidence that he had any agency, whatever, in procuring the arrest, but this was sought to be established by circumstantial testimony, and by proof of his conversations; while he, on the other hand, established the fact that, at the time of the arrest, he was at his own house, about one and-a-half miles distant, and proved by Col. Giltner, whose deposition was taken in Kentucky, that he exerted no influence in procuring the arrest, and had petitioned him to release the prisoners.
The principle witness against the plaintiff in error was his miller, one Bufus Brown, who, among other things, stated, that immediately after the prisoners were taken by his house, he went down to the house of plaintiff in error, who told him that “he had been the instigation of their arrest; that he thought these boys were in Kentucky, but the soldiers had them, and had hung one of them, and he had been the instigation of it.” On cross-examination, he denied that he informed the plaintiff in error that there were men hiding in the woods *163 who had “ robbed” the mill, and that he had urged liitn to go to Bull’s Gap and get soldiers to arrest them, but said he had^ told the plaintiff in error that the rebel soldiers, as they passed, were robbing the mill, and had asked him to go to the Gap and get protection papers. He was asked by the counsel for the plaintiff in error, “if he had not, at the residence of defendant, a short time before the arrest of the Hauns, and in the presence of James C. Witt, on two or three occasions, told defendant that there was a crowd of men hiding around in the woods near the mill; that the mill had been broken into, and he must go to Bull’s Gap and get soldiers to stop them, or they would suffer; and if defendant, in reply, did not refuse, and say he would have no hand in bringing á scout there? Witness denied having any such conversation.” The deposition of James C. Witt was taken to contradict this witness, and part of it ■ was allowed to be read to the jury; but his Hon'or refused to allow the following statement, in the deposition, to be • read, viz: “ I was at P. A. Witts’ two or three weeks before Alexander Haun’s sons was arrested in the woods and took to Bull’s Grap to Giltner’s headquarters, as I understood. R. Brown came to P. A. Witt, and said the mill had been broken into and robbed. Brown the miller, came to P. A. Witt and said the mill' had been robbed again, and wanted P. A. Witt to go to the Gap and get a scout and search the woods, and see if they could not stop the mill from being robbed, or their family would suffer. P. A. Witt refused to do so, saying that he did not want a scout after any one.” • - •
It is a familiar rule that “ it is not irrelevant to in *164 quire of the -witness whether he has not, on some former occasion, given a different account of the matter of fact to which he has already testified, in order to lay a foundation for impeaching his testimony by contradicting him.” 1 Greenl. Ev., §449, 2d ed. But “before this can be done, it is generally held necessary, in the case of verbal statements, first, to ask him as to time, place and person involved in the supposed contradiction. It is not enough to ask him the general question, whether he has ever said so and so, nor whether he has always told the same story, because it may frequently happen, that, upon the general question, he may not remember • whether he has so • said; whereas, when his attention is challenged to particular circumstances and occasions, he may recollect and explain what he has formerly said. 1 Greenl. Ev., § 462, 2d ed.
It is not possible, owing to the frailty of human memory, as a general rule, to fix, with accuracy, the precise day or hour, when any conversation occurred, and we are of opinion that, as the attention of the witness intended to be impeached, was directed to a conversation occurring at the residence of defendant, a short time before the arrest, and as the impeaching- witness detailed conversations occurring at the place designated, within three weeks before the arrest, this was sufficient to satisfy the object of the rule, and to allow the impeached witness a reasonable opportunity for explanation; and the entire deposition should have gone to the jury, so as to enable them to weigh the evidence, and determine to which of the witnesses they would give credit. In this case, it is apparent that the evidence was material *165 for the plaintiff in error; as No all Witt, a witness, who was referred to by Brown, as being present when the plaintiff in error said he had been the instigation of their arrest, contradicted this, and other statements, alleged by Brown to have been made in the same conversation ; and testified, further, that he had heard the plaintiff in error ask the guard, as they passed along with the prisoners, to have them turned loose, and heard him say to the guard, that they were his neighbors and relatives, and that he desired they should be treated kindly.
W. C. Witt, a witness for the plaintiff below, stated that “in the spring of 1864, he had heard defendant make threats against Union men, and defendant was a rebel; and that defendant was complaining that some of his Union neighbors had been troubling him, and been there after him, and had made him run from his house after night, and the rebels were here now, and that he did not intend that they should, stay at home.” This evidence was objected to, and allowed by the Court to go to the jury “for the present;” and his Honor, in his charge, to the jury, said: “The jury can only look to any threats in proof, of the defendant, if they are satisfied such were aimed at the plaintiff, or if such threats comprehend him within their scope and meaning.” As there is evidence, in the record, tending to show that the plaintiff in error, at and before the time of the arrest of defendant and his brother, believed that they were not in the neighborhood, the evidence of W. C. Witt, if admissible at all, should have been submitted in' connection with that fact. But the witness express *166 ly stated that he did not hear the names of the Hauns mentioned, and it does not appear, from his testimony, 'whether the conversation to which he testified was before or after the arrest of defendant in error. The conversation was too vague and general, perhaps, to be admissible .within the well established rules of evidence, and the jury were not instructed as to the manner in which they were to ascertain whether they were aimed at the plaintiff, or whether he was comprehended within their scope and meaning. The conversation was vague and general, and does not seem to have been connected by any other proof or circumstance with the defendant in error.
Aside from these errors in the proceedings in the Court below, we feel constrained to observe, after a careful examination of the entire record, that we are not satisfied that the evidence is sufficient to support the verdict, as the case presented in it seems to rest entirely upon casual conversations — the weakest of all human testimony. See 1 Stark. Ev., 484; 1 Greenl. Ev., § 200. It was tried, moreover, on the 21st of April, 1868, when the mode of selecting juries, as then established by statute, was of such a character as to occasion general distrust in regard to the impartiality of jury trials in this State.
Reverse the judgment.